JOHN KASPER, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Fourth Department, May 8, 1935.

*White & Shinaman* [*Francis D. McCurn* of counsel], for the appellant.

*P. Augustus Hopkins* [*Joe Schapiro* of counsel], for the respondent.

CROSBY, J.   Defendant issued two so-called industrial policies upon the life of Frank Kuta.   They were identical in form, excepting as to amounts, one being for $462, and one for $186. . Each policy, by its terms, was payable " to the executor or administrator of the Insured, unless payment be made under the provisions of the next succeeding paragraph."   The next succeeding paragraph provides that: " The Company may make any payment * * * provided herein to the Insured, husband or wife, or any relative by blood or connection by marriage of the Insured, or to any other person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, or for his or her burial," etc.

The provision last quoted is called a " facility of payment " clause, and notwithstanding the fact that the policy, by its terms, is payable to the executor or administrator, the " facility of payment " provision is intended to give the insurer the option to pay to any one " equitably entitled," for any of the reasons stated therein, so as to save the expense of administration.   These industrial policies are usually for small amounts, and oftentimes the normal expenses of administration would consume all or a substantial part of the avails.

After the death of the insured the defendant paid the full amount of the policies to a daughter of the insured who not only was appointed administratrix of his estate, but who, after her appointment, paid the funeral expenses of the assured.   It would seem that the right of defendant to pay to this daughter was assured not only under the primary provision of the policies, but also under the terms of the " facility of payment " clause, for the insured lived with her, was cared for by her in his last illness, and his funeral was held from her home, and she afterward paid his debts and funeral expenses.

Plaintiff, however, claims the right to be paid under the following statement of facts, which, of course, must be stated as favorably to plaintiff as the record will warrant, since the jury found in his favor.

Plaintiff is a nephew of the insured. While he is not named in the policies as beneficiary, he paid all the premiums, the policies were delivered to him, and were at all times in his possession until the death of the insured, and he thereafter delivered them to an agent of the insurer, together with proofs of death and the receipt book showing that all premiums had been paid. Plaintiff testified that, when the first policy was applied for, the plaintiff, the insured, defendant's soliciting agent and one Kenney, an assistant superintendent of defendant, were present, and that plaintiff was assured by Kenney and the soliciting agent that he (plaintiff) would be the beneficiary, and would be paid the amount of the policy, at the death of the insured, provided he paid the premiums. Plaintiff also testified that, when the second, and smaller, policy was applied for, the same assurance was given him by the defendant's soliciting agent.

Defendant's agent, Kenney, disputes this version of the transaction and says that plaintiff was promised payment on the policy only if he furnished proof of having paid the funeral expenses. But we must accept the plaintiff's version of this matter, for the question was left to the jury and they have found in plaintiff's favor.

Plaintiff made proof by two former soliciting agents of defendant, that there was a custom of the defendant to pay the policy benefit to whomsoever paid the premiums.

Plaintiff bases his right to recover upon the doctrine of " present election " laid down in the case of *Shea* v. *United States Industrial Insurance Co.* (23 App. Div. 53). The instant case bears some resemblance to the *Shea* case, in which it is held that an oral agreement, made when the policy is applied for, that the premium payer would be paid the amount of the policy at the death of the insured, did not violate the rule against varying the terms of a written instrument by parol, but constituted a " present election " by the insurer to pay to someone other than the administrator pursuant to the option reserved to the insurer under the " facility of payment " clause. In other words, that the insurer exercised its option at the inception of the contract rather than waiting until the death of the insured. The *Shea* case has been followed in many Special term decisions and cited with approval in many more. (See, for example, *Foryciarz* v. *Prudential Ins. Co.*, 95 Misc. 306; affd., 177 App. Div. 952; also *Tarasowski* v. *Prudential Ins. Co.*, 113 Misc. 248.)

The doctrine of the *Shea* case is also upheld in *La Raw* v. *Prudential Ins. Co.* (12 F. [2d] 142).

However, I am of opinion that the doctrine of the *Shea* case is not controlling here. The *Shea* case was saturated with fraud from beginning to end, particularly at the end when, under the authority

of the " facility of payment " clause, the insurer, by paying one-fifth of the amount of the policy, obtained a settlement in full from one whose equities were no better than the plaintiff's, and payment was not made to an administrator. The policy, by its terms, was payable to an administrator, as in the instant case.

Furthermore, in the *Shea* case the agent of the insurer imposed on the plaintiff, who could not read, by misinterpreting the terms of the policy at the time it was applied for. In the instant case the plaintiff could read, and he had the policies in his possession for several years, and should have known their provisions. (*Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411; *Minsker* v. *John Hancock Mutual Life Ins. Co.*, 254 id. 333.)

In another important particular the *Shea* case differs from the instant case. In the former it was stated that the defendant had instructed its agents to represent to customers that persons paying the premiums would be the beneficiaries of the policies, and that the representations were made by one having authority to bind the insurer. In the instant case plaintiff's only proof in regard to Kenney was that he was an " assistant superintendent." The only proof concerning his authority and duties was given by defendant's witness Segerson who testified that Kenney's only duty was to supervise the work of the soliciting agents and to assist them " to sell new business."

Some of the equities of the case are in favor of plaintiff. He paid all the premiums, and the insured was indebted to him, and the insurance was taken out for the purpose, among others, of paying plaintiff what the insured owed him. In that respect this case is somewhat like the case of *McCarthy* v. *Prudential Ins. Co.* (224 App. Div. 350). In that case a premium payer was a creditor of the insured and the insurer settled with her in full by paying only a portion of the face of the policy, and it was held that an administratrix, when appointed, could recover the balance. In that case the court said: " Its sole effect [speaking of the ' facility of payment ' clause] is to afford to the insurer an option to make the payment under the policy in good faith to any one within the description of the clause. If payment be made, it is a defense to an action brought subsequently by an executor or administrator. In other words, there is no one *within this clause* who can legally enforce payment, and the insurer is responsible to the executor or administrator, everything else being equal, unless it has made payment under that clause."

Later in the opinion it is said: " But there was no legal obligation upon the part of the defendant to pay to any one but an executor or administrator of the insured."

In the instant case the money was paid by defendant to an administratrix as such. She has placed the money in an administrator's account, and she will have to account for it to the Surrogate's Court. If plaintiff has any provable claim against the insured or his estate — and plaintiff himself testified that the insurance was taken out to pay a debt which the insured owed to plaintiff — he may present his claim to the administratrix.

Mistakes, misunderstandings and frauds will be the inevitable result of holding that the terms of these insurance policies can, in effect, be changed by parol proof based on faulty and biased recollections of interested parties. The policies in question stated plainly that their terms could not be varied except by the insurer's president or secretary. Plaintiff does not sue in fraud to recover back the premiums he paid, and he does not sue to reform the contracts. He accepts them as they are, disclaiming any attempt to vary them, and relies on oral proof of an election, in advance of the issuance of the policy, made by the insurer. And, as I have pointed out, I fail to find any proof that Kenney had any authority to make an election which would have the effect to vary the terms of the written contracts.

It remains to consider plaintiff's proof of defendant's custom of paying, in most cases, the amount of the policy to the one who has paid the premiums. That proof, as I read it, amounts to no more than this: that in a large majority of the cases it so happens that the one who paid the premiums is the one to receive the proceeds of the policy. But the witnesses who testified that it was the custom to pay the amount of the policy to the premium payers admitted that the rule was not uniform, and that the defendant exercised its option in each case. Furthermore, custom cannot be proven to vary the terms of an unambiguous contract. (*Hopper* v. *Sage*, 112 N. Y. 530, 535.)

The judgment and order should be reversed on the law and the facts, with costs, and judgment directed in favor of defendant, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law and facts, with costs and judgment directed in favor of the defendant, with costs.