BARNETT REFF, Plaintiff, v. JOSEPH KANTERMAN et al., Defendants.

Supreme Court, Special Term, Nassau County, July 25, 1962.

1030

*Blum, Jolles, Haimoff, Szabad & Gersen* for Joseph Kanterman, defendant. *Goldwater & Flynn* for North Side Savings Bank, defendant. *William J. Murphy* for plaintiff.

PAUL J. WIDLITZ, J. Motion by the defendant, Joseph Kanterman, for summary judgment dismissing the complaint and declaring Joseph Kanterman to be the owner of a sum on deposit with the defendant, North Side Savings Bank.

The undisputed evidence reveals: That one Celia Reff, the deceased wife of the plaintiff and the sister of the defendant movant, opened an account on February 14, 1956 in the defendant bank " In Trust for Joseph Kanterman "; that the account varied from $8,654.26, on the day of its opening, to $8,409.95, on or about the date of the depositor's death, January 7, 1962; that the passbook was in the possession of the decedent until she died; that the movant was not aware of the existence of the account until the delivery of the book to him by the plaintiff after the decedent's death.

The plaintiff contends that the decedent had no intention of having the sum on deposit at her death pass to Joseph Kanterman; that a transfer, if so intended, would be in violation of plaintiff's rights under sections 18 and 83 of the Decedent Estate Law; and that the transfer would be in violation of an antenuptial agreement whereby the decedent promised to leave all her property to the plaintiff upon the condition that plaintiff (1) " fulfilled his marital vows," (2) " contributed to her support to the best of his ability," (3) " rendered aid, comfort and solace to her in the event she became ill," and upon the condition that " Plaintiff and the said Celia Reff continued to live together as Husband and Wife so long as both remained alive."

In addition to denials of material allegations of the complaint, the defendant Kanterman pleads that the antenuptial agreement was made in consideration of marriage and is unenforcible under section 31 of the Personal Property Law.

Since March 1, 1959, summary judgment (with some limitation in matrimonial actions) may be obtained in any action. On a motion for summary judgment, a party must "assemble, lay bare and reveal his proofs" (*Di Sabato* v. *Soffes,* 9 A D 2d 297, 301). The defendant movant relies upon (1) the presumption arising from the existence of the account "In Trust for Joseph Kanterman," and (2) the Statute of Frauds provisions in section 31 of the Personal Property Law.

The burden is on the plaintiff to overcome the presumption, but no evidence whatsoever has been offered to show to the slightest extent that the decedent did not actually intend — as the form of the account indicated — that the sum on deposit at her death should pass to Joseph Kanterman. As stated in *Matter of Totten* (179 N. Y. 112, 126): "In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." In referring to the aforesaid quotation from *Matter of Totten,* the Court of Appeals stated in *Matter of Halpern* (303 N. Y. 33, 38–39) "That rule must be applied   *   *   * in the absence of any proof that those transfers were 'intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed' (*Newman* v. *Dore,* 275 N. Y. 371, 381, *supra*). Since there was no such evidence here, these Totten trusts were like all other Totten trusts, and, when the depositor died, they were completely effective (1 Scott on Trusts, § 58.3, p. 360), and had the automatic and immediate consequence of putting absolute ownership in the   *   *   * beneficiary." The fact that in the instant case the defendant movant had no knowledge of the existence of a trust account until his sister's death, does not affect the validity of the trust (*Matter of Widelski,* 3 Misc 2d 733; *Martin* v. *Funk,* 75 N. Y. 134; *Cunningham* v. *Davenport,* 147 N. Y. 43, 47). Nor does the fact that the decedent during the years from 1956 to 1962 made certain withdrawals indicate an intention to revoke the trust as to the balance remaining at her death (*Haber* v. *Haber,* 214 N. Y. S. 2d 134, 136 and cases cited).

As to the contention of the plaintiff that the disposition by his deceased wife violated rights accorded him by sections 18 and 83 of the Decedent Estate Law, the same contention was raised and rejected in *Matter of Halpern* (303 N. Y. 33, *supra*).

With respect to the oral antenuptial agreement allegedly made by the decedent to leave all her property to the plaintiff on her death, it is clear that such agreement, if made, would not be enforcible. Reliance is placed by the plaintiff on *Matter of*

*Goldberg* (157 Misc. 49, affd. 249 App. Div. 751) that his subsequent marriage and performance of his marital obligations eliminates the necessity for a writing as required by section 31 of the Personal Property Law. But the lower courts in the *Goldberg* case were reversed by the Court of Appeals (275 N. Y. 186, 192) wherein it was stated: "marriage itself constitutes no part performance of an oral antenuptial contract so as to take it out of the operation of the Statute of Frauds." Here the obligations assumed by the plaintiff were obligations assumed by all parties who enter the marital state (see *Bernstein* v. *Prudential Ins. Co.*, 204 Misc. 775; *Marum* v. *Marum*, 21 Misc 2d 474).

Accordingly, in the absence of proof by the plaintiff to raise a question of fact, the defendant is declared the owner of bank account No. B31631 in the defendant bank, and a judgment to that effect may be entered. However, this account should be left untouched until it be determined by a Surrogate in an appropriate proceeding that no part of it is necessary to pay creditors of the decedent or reasonable funeral or administration expenses (see *Beakes Dairy Co.* v. *Berns*, 128 App. Div. 137; *Matter of Walsh*, 23 Misc 2d 873, 875; *Matter of Reich*, 146 Misc. 616, 620, 621). There is no proof before this court on that subject, but paragraph 23 of the complaint indicates that the estate may have been insufficient to pay the funeral and administration expenses. (See, also, *Matter of Matthews*, 175 Misc. 524.)